May it please the Court, my name is Martin Crowley and I represent the plaintiff appellant Dennis Sam Dehne. The memorandum opinion from this Court in September of 2003 said that summary judgment was not proper because a jury could find that Mr. Griffin had ejected Dehne in order to If that was the panel decision, then why does the District Court then grant qualified immunity to Griffin on remand, thus removing from the jury's consideration Griffin's personal conduct? There was no bad guy left for the jury to have a case against. They only left the official capacity of Mr. Griffin and the City of Reno, which is not What was the practical difference in terms of what the jury was asked to decide about Mr. Griffin from taking away his individual capacity suit and leaving his official capacity suit? What practical difference did that make to what the jury was asked to decide? Well, I think I could only speculate in the minds of the jurors on that. If they're looking at only city officials and the city entity as a defendant, they might not feel inclined to grant an award against the city or its official mayor for that type of conduct. So I only would be speculating at that point. They might want to go after Griffin as an individual and felt that he was out of line, but that was removed from their review. Was the legal question that the jury was asked to decide changed as a result of the change from focus on individual capacity to official capacity? I think the legal questions should have remained the same. If we were arguing the case of the jury in its individual capacity, I think the arguments and legal questions presented would remain the same. So the question presented to the jury with respect to Mr. Griffin was what his motivation was? Yes. And it would have been the same had the individual capacity question been to the jury as to Mr. Griffin? Yes. Okay. The problem we have in Reno is that there's very few people that are willing to stand up and fight for First Amendment rights to speak freely and openly in public meetings. As the record shows, Mr. Denea is a regular visitor to the city council meetings there and speaks on public issues. So he is personally very aware of what the conduct of an individual is required in council meetings. But there are people that go to council meetings sometimes that speak on very bizarre subjects like being abducted by aliens or that there is a plot by the president and the CIA to assassinate them. And what the council and the mayor do with those people is they just sit there and look at their notes and read the next agenda item. And they don't pay attention to them. They don't interact with them. They just wait for their three minutes and they excuse them. But they always go after Mr. Denea because he's always on point. He has something to say of importance. And in this case — When you say they always go after Mr. Denea, what do you mean when you say that? Well, there always seems to be a regular dialogue between the mayor when Mr. Denea is speaking about public issues. They seem to get into it on a regular basis. I shouldn't say every time he speaks. But on a regular basis, Mr. Denea is challenged on things that he speaks at the podium, which is different. He's treated differently than a lot of the speakers are there. And, of course, his regular appearances probably don't help matters in his relationship with the city council. But even though Mr. Denea has more than done his part for his country, retiring as a lieutenant colonel in the United States Air Force, he's willing to speak up when government officials cross the line. His original complaint to the Ethics Commission against Mr. Griffin resulted in an Ethics Commission ruling that the former mayor's when dealing with airport matters prohibited him from speaking on airport business at the council table. And this is the very issue, as you know, that was being addressed that day. And when the mayor got into the airport matter, he knew that Denea was going to call him on it, and he wanted to squelch his comments. That's what it was all about. So at least that's Mr. Denea's argument, which the jury apparently didn't agree with on the facts. On the official capacity part of it, yes, I would have to agree with that. They didn't see it in his official capacity. But I don't believe it's being melodramatic when we say here that we come to this point after almost eight years of arguing this case. This happened in 1999 in the city council. Do we preserve the right of reasonable dissent in Reno politics, or do those in power get to do whatever they want to do whenever they want to? Throw out those that oppose the dissent. Is it reasonable dissent, or is it an ability to disrupt? Well, Judge Hugg, there was no disruption until Mayor Griffin said, I think I'm going to trail this to another time when it was the time for Mr. Denea to speak on the subject. And he started saying, should we have a vote on whether Mr. Denea gets to speak today on this matter? And that was out of line, too, because that's against the normal practices in Reno. You put in a card and a request to speak, you're allowed to speak. But Mayor Griffin decides to have an impromptu vote on whether or not Denea is going to speak. And I think that demonstrated the animosity right there before Denea even stepped to the podium. And he hadn't disrupted anything. He whispered. You can't even see him on the video. He went up to the city attorney. But later was when the disruption occurred, and that's when he was wanting the mayor to apologize and that sort of thing. The disruption was after that. Yes, the disruption happened after Mayor Griffin said, I'd like to continue this to a later time without allowing Denea to speak. And they were in the process of taking a vote on whether he should be allowed to speak. And Denea said, I demand the right to speak. He was there. He had waited for several hours for his opportunity to speak. And he was going to be denied his right to speak in a very improper manner. The rules were the practice was that when someone put in a request to speak, they were allowed to speak. And, of course, the disruption happened after he said, we're going to do this later. We're going to come back tonight and do this. But the argument in this suit stems from the ultimate ejection, correct? Whether the ejection was proper? Well, I think that's part of the issue. But being denied his right to speak on a public issue was part and parcel of the whole thing. I mean, the mayor had just recently, just a few weeks before, received the opinion from the Ethics Commission that said he'd violated a conflict of interest. And Denea was the instrument in bringing that public rebuke to the mayor. This was very fresh in the mayor's mind. He was still stinging from this when this occurred in June of 1999. I understand your point. But what I'm asking is the lawsuit and its request for damages is premised upon what? Upon the ejection? The ejection would be the ultimate in damages. But I think being denied the opportunity to speak has to be considered part and parcel of the damages. That's his First Amendment, right, to get up and speak on a public issue and tell the community that the mayor once again is speaking on airport matter. And I think that's what Denea wanted to do. It's quite obvious he put in a request to speak on that point. Let me ask you this. If Mr. Griffin had not been dismissed based on qualified immunity in his individual capacity, so he had stayed in the lawsuit in both capacities, individual and official, the trial went forward as it went forward, and the instructions went to the jury as they went to the jury, and Mr. Griffin lost, would you be standing here? Or Mr. Denea? I'm sorry, Mr. Denea lost. I don't think so. Based on what's been put in the appeals, we wouldn't have had an issue at that point. That was a pretty singular issue as it's taking out the individual from the lawsuit. But I believe the law of the case was that he was supposed to go to the jury. As a matter of fact, the city's position is they almost equate qualified immunity with official capacity. In other words, if you have an official capacity, then you automatically get qualified immunity. And I think that's one of the problems we're seeing here. That's the argument from the city. He's acting in his official capacity, so therefore grant the individual qualified immunity. And I see my time's almost up. I wonder if I could reserve a little bit. Why don't you save your time? Let's hear it. Let's hear it from the city, and then you'll get a chance to respond. Thank you. Excuse me. Good morning. There's two reasons why Mayor Griffin should be. Could you please identify yourself for the record? Sorry. Yes. Donald Christensen on behalf of the City of Reno and Mayor Griffin. Thank you. There's two reasons why a former Mayor Griffin should prevail in this matter, and the district court judgment should be affirmed. First, the issue of qualified immunity was correctly decided in favor of Mayor Griffin with respect to his individual liability. The question was not clear at the time as to whether a reasonable person in Mayor Griffin's position could remove a clearly disruptive person from the meeting, regardless of what Mayor Griffin's subjective intent was. The law was not clearly decided at that time. Secondly, as has already been raised by the prior argument, regardless of whether that issue is correctly determined, the jury decided in this case that there was no First Amendment violation, that Mayor Griffin had removed the plaintiff because of his disruptive behavior and not because of any First Amendment violation impingement. So with respect to whether the immunity is properly granted, really the question as far as our focus here today was whether it should have been clear to a reasonable person in Mayor Griffin's position at the time as to whether he could remove a disruptive person, regardless of Mayor Griffin's intent. There's no dispute here. I don't think that there was actual disruption of the meeting by the plaintiff. This Court had found that in its order reversing the grant of summary judgment, that the disruptive conduct did justify his removal. And the jury was instructed here as a matter of law that the plaintiff was sufficiently disruptive to remove him from the meeting. So really the only question is whether or not what the status of the law was at the time as to what Mayor Griffin should have known in acting to remove this clearly disruptive person. The answer under the Ninth Circuit precedent at the time, back in June of 1999 when this occurred, was that a reasonable person would not have known that subjective intent of the acting party, Mayor Griffin here, was particularly relevant. In White v. Norwalk, the plaintiffs were removed at least three different times from city council meetings. The last one occurred when one of the plaintiffs was speaking about a claimed legal matter involving a city official. This Court upheld the finding that there was no constitutional violation and said, I quote, while a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, it certainly may stop him if his speech becomes irrelevant or repetitious. And then in Kent v. Santa Monica, the plaintiff claimed he was ejected from a board meeting because the defendants were discriminating between the viewers' viewpoints. This Court upheld summary judgment in that case for defendants who removed the plaintiff from the meeting when he became disruptive despite this claim by the plaintiff that there was viewpoint discrimination. That was the status of the law as of June 1999 when Mayor Griffin acted to remove the plaintiff. The state of the law really was recently affirmed or clarified by this Court's decision in Skoog v. County of Clackamas. It's a case not cited in the briefs. It was just decided in November of 2006, 469, Fed 3rd, 1221. In that case, this Court held that before November of 2006, the law was not yet clearly established as to whether police action could be taken, regardless of a wrongful retaliatory intent under the First Amendment, if the actor had probable cause to take the action. I see that decision as directly analogous here. There's no question that Mayor Griffin had far more than probable cause, if you would, to find that the plaintiff was disrupting the meeting. And the question as shown as, excuse me, as the Court clarified in Skoog, the intent of the actor as far as the status of the law, that was not established as being a necessarily relevant factor until this Court's decision in November of 2006. So what I'm saying is that that just adds to the city's argument here that the law was not clearly established back in June of 1999 when Mayor Griffin acted. Apart from the qualified immunity issue, I think as counsel for the appellant has already agreed that if this case had gone to the jury on the issue of individual liability for Mayor Griffin, the same legal question would have been at issue for the jury. The same jury instruction would have been given. The jury was already instructed that Mayor Griffin was a policymaker. The exact same instruction, instruction 11 and instruction 7, would have been given to the jury even if Mayor Griffin was still in the case. How much, if anything, was the jury told about the practical significance of the difference between an individual capacity suit and an official capacity suit against Mr. Griffin? There's nothing in the jury instructions that shows that distinction. Is there anything in the evidence presented at trial? I don't believe so. Not from the evidence during the trial. But as shown on the verdict form, it was presented in Mayor Griffin's official capacity with the city as being defendants. And because he was a policymaker as a matter of law, that's what the jury was instructed. It was the identical instruction that was given.  The jury was not informed as to who would be responsible for the payment of any damages that might be assessed. There's nothing in the evidence. There's certainly nothing in the jury instructions to that effect. It's simply, all right, here's a question presented under section 11,  It says, Do you find that the plaintiff was correctly ejected because of his disruptive conduct or was he ejected because there was viewpoint discrimination by the acting parties? And that was the question. If Mayor Griffin was still in the case in his individual capacity at that time, the same question would have been presented. So basically, we would ask that you find either qualified immunity was properly granted, for the reasons I've stated, or in the alternative basis, because the same legal question would have presented, there would not have been any different outcome. We'd ask that you affirm the decision in favor of Mayor Griffin. Thank you very much. You've got about a minute in response. I think the problem here is that Mayor Griffin was discussing an airport matter when he ejected Diné. He shouldn't have been at the table. He shouldn't have been deciding if Diné had the right to speak on an airport issue. Griffin was the one who had no right to speak on airport matters. He shouldn't have been controlling the meeting and taking a vote on whether Diné had a right to speak. On the issue of the jury determining where the money would come from, I think it's without question that everyone could assume the money would come from public coffers. There was no hint that it would be paid by anybody else because there was no defendant other than a public defendant and a public entity before the jury. I think the jury should have been instructed differently. Of course, we believe that there should have been an individual instruction, an individual defendant before the jury in this case. Thank you very much. The case of Diné v. City of Reno is now submitted for decision.
judges: Hug, W. Fletcher, Holland